UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| PRO TRAK INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. C-05-342-JM |
| ) | |
| PROTRACKER SOFTWARE, INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 1

   A.  There Are No Genuine Issues Of Material Fact Relating To Plaintiff's Laches ........ 1

      1.  The Doctrine Of Laches ................................................................................... 1

      2.  Plaintiff Does Not Dispute That Defendant Would Be Severely Prejudiced ........... 2

      3.  Plaintiff Knew or Should Have Known of the Alleged Infringement SEVEN (7) Years Before Filing Suit and Has No Excuse for Delaying Taking Action .............. 2

         i.  Plaintiff Had At Least Constructive Knowledge of Defendant Since 1998 ......... 2

         ii.  The Doctrine of Progressive Encroachment Does Not Apply .............................. 4

      4.  Plaintiff's Allegations That Defendant Had Unclean Hands Are Unfounded ........ 5

      5.  Plaintiff's Assertion That The Public Would Be Harmed Is False .......................... 6

   B.  Plaintiff's Asserted U.S. Reg. No. 1,835,278 Should Be Cancelled .............................. 7

   C.  There Is No Likelihood Of Confusion Between the Parties' Names and Marks ........ 8

      1.  The Parties' Goods Are Very Different ................................................................. 8

      2.  Channels Of Trade, Advertising, And Class Of Prospective Purchasers Are All Different ................................................................................................................ 8

      3.  Lack of Actual Confusion .................................................................................... 9

      4.  The Marks Are Different ...................................................................................... 9

      5.  Defendant's Intent and Strength of the Marks ..................................................... 10

      6.  There is No Likelihood of Confusion ................................................................. 10

III.  CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Aktiebolaget Electrolux v. Armatron Int'l, Inc.*, 999 F.2d 1 (1st Cir. 1993) .................................. 9

*Boston Athletic Ass'n. v. Sullivan;* 867 F.2d 22 (1st Cir. 1989) ...................................................... 1

*Bridgestone/Firestone Research, Inc. v. Auto. Club de l'Ouest de la France*, 245 F.3d 1359 (Fed. Cir. 2001) ................................................................................................................................. 3

*E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604 (9th Cir. 1983) ....................................................... 3

*Miller v. Glenn Miller Prods., Inc.,* 454 F.3d 975 (9th Cir. 2006) ............................................... 1, 3

*National Trailways Bus System v. Trailways Van Lines, Inc.* 269 F.Supp. 352 (E.D.N.Y. 1965) . 4

*New Era Publications Int'l Henry Holt & Co.,* 873 F.2d 576 (2d Cir. 1989) ................................. 1

*P.R. Ports Auth. v. Umpierre-Solares*, 456 F. 3d 220 (1st Cir. 2006) ............................................. 1

*Profitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C.*, 314 F.3d 62 (2d Cir. 2002) ...................................................................................................... 4

*Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n.,* 2006 U.S. App. LEXIS 25359 (9th Cir. 2006) ............................................................................................................. 1

*Valmor Product Co. v. Standard Products Corp.,* 464 F.2d 200 (1st Cir. 1972) ............................ 3

**Treatises**

*5 McCarthy on Trademarks* (4th Ed. 1996) ............................................................................ 1, 3, 6

## I. INTRODUCTION

There are no genuine issues of material fact, making summary judgment in favor of Defendant ProTracker Software, Inc. ("Defendant") appropriate in this case on the three issues presented in Defendant's Motion for Summary Judgment: (1) Laches bars Plaintiff Pro Trak International, Inc. ("Plaintiff") from obtaining any relief;[1] (2) the federal trademark registration asserted by Plaintiff is invalid and should be cancelled; and (3) there is no likelihood of confusion between the parties' names and marks.[2]

## II. ARGUMENT

**A.   There Are No Genuine Issues Of Material Fact Relating To Plaintiff's Laches**

**1.   The Doctrine Of Laches**

Laches requires that Plaintiff knew or should have known of the allegedly infringing activity, that Plaintiff inexcusably delayed in taking action and that Defendant would be prejudiced if Plaintiff were allowed to belatedly assert its alleged rights. *See New Era Publications Int'l Henry Holt & Co.,* 873 F.2d 576, 584-85 (2d Cir. 1989). As noted by Plaintiff, laches requires a sliding-scale analysis of delay and prejudice. Pln. Memo, 20.[3] Where, as here, the prejudice is great, even a small delay gives rise to the defense of laches. *See 5 McCarthy on Trademarks*, §31.2 (4th Ed. 1996). Here, Plaintiff delayed for seven (7) years before taking any action and the severe prejudice to Defendant is undisputed. *See* Pln. Memo, 20-25.

---

[1] Contrary to Plaintiff's assertion, summary judgment is an appropriate context for a laches determination where, as is the case here, there are no genuine issues of material fact. *See Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n.,* 2006 U.S. App. LEXIS 25359 (9th Cir. 2006); *Miller v. Glenn Miller Prods., Inc.,* 454 F.3d 975 (9th Cir. 2006); *P.R. Ports Auth. v. Umpierre-Solares,* 456 F. 3d 220 (1st Cir. 2006).

[2] Contrary to Plaintiff's assertion, summary judgment is an appropriate context for a determination of a lack of likelihood of confusion where, as is the case here, there are no genuine issues of material fact. *See Boston Athletic Ass'n. v. Sullivan;* 867 F.2d 22, 24 (1st Cir. 1989) (summary judgment appropriate in trademark case).

[3] The memorandum, exhibits, and affidavits cited herein are contained in the record. Defendant's new Exhibit R is attached in the Appendix submitted herewith. Plaintiff's Opposition Memorandum is cited by reference and relevant pages (*e.g.*, "Pln. Memo, 20"). Defendant's opening memorandum is cited by reference and relevant pages (*e.g.*, "Def. Memo, 7-8). Exhibits are cited by the appropriate lettered reference followed by relevant paragraphs or pages (*e.g.*, "Pln. Ex. A, 16").

1

**2.     Plaintiff Does Not Dispute That Defendant Would Be Severely Prejudiced**

Plaintiff does not dispute Defendant's severe prejudice if Plaintiff were allowed now to enforce its purported rights. *Id.* (no dispute of Defendant's prejudice). The undisputed facts are that during the seven (7) years that Defendant used its names and marks with Plaintiff's knowledge, Defendant developed widespread brand recognition and created both an identity and a significant market for its company and products. Def. Memo, 7-8; Def. Ex. A, 16. Also undisputed is that Defendant's entire identity and ability to survive, is now tied to the continued use of its names and marks it created, developed and used since 1997. *Id.*

**3.     Plaintiff Knew or Should Have Known of the Alleged Infringement SEVEN (7) Years Before Filing Suit and Has No Excuse for Delaying Taking Action**

  **i.  Plaintiff Had At Least Constructive Knowledge of Defendant Since 1998**

It is undisputed that Plaintiff delayed taking any action for seven years prior to contacting Defendant. It is further undisputed that Plaintiff has no excuse or justification for such delay. Plaintiff does not dispute that references to Defendant and its names and marks PROTRACKER SOFTWARE and PROTRACKER SYSTEM appeared in a search report Plaintiff obtained on June 29, 1998. Def. Memo, 20-25. Plaintiff relies on Defendant's brief as support for the irrelevant argument that Plaintiff obtained the search report to investigate a third party, Marmen Computing, Inc. ("Marmen"). Pln. Memo, 21-22. Plaintiff's argument seems to be that it obtained the search report for that specific reason and should not be deemed to have knowledge of any other marks in the report. *Id.* Plaintiff offers no legal support for this argument. *Id.*

Plaintiff's litigation-inspired reasons for obtaining the search report are irrelevant. The undisputed fact is that it obtained the report which included references to Defendant and its name and mark. *Id.* at 22. Further, Plaintiff already had detailed information about Marmen - it did not need the general information provided by the search report. *See* Pln. Ex. Q (detailed Dun & Bradstreet report dated June 17, 1998); Def. Ex. R (June 15, 1998 printout of PTO data regarding

2

Marmen's registration). Finally, Plaintiff offers <u>no evidence</u> as to any reason it obtained the report, actually citing to Defendant's Memorandum as support for its reasons. Pln. Memo, 22. Obviously, the reason for obtaining a search report is to determine the scope of other uses, registrations and applications for similar marks for related products, which is exactly the information disclosed in Plaintiff's search report. *See* Pln. Ex. R.

Plaintiff wrongly relies on *Valmor Product Co. v. Standard Products Corp.,* 464 F.2d 200, 204 (1st Cir. 1972), as support for why Plaintiff should not be deemed to have constructive knowledge of Defendant and its marks. Pln. Memo, 22. *Valmor* construed 15 U.S.C. §1072,[4] and concluded that "constructive notice" of a federal trademark registration under Section 1072 does not provide constructive notice for laches purposes. *Valmor*, 464 F.2d at 204. Defendant is not relying on a federal trademark registration to provide statutory constructive notice to Plaintiff. Plaintiff physically possessed a tangible search report it ordered for the mark PROTRAK. Pln. Ex. R. Plaintiff's search report duly reported Defendant's name and mark. *Id.* at KOZ-1061; Def. Ex. F. Plaintiff certainly knew or should have known of Defendant's name and mark from the search report. Furthermore, courts have consistently held that constructive notice occurs when a plaintiff should have known of defendant and such constructive notice starts the clock running for laches. *See generally Miller* 454 F.3d 975; *Bridgestone/Firestone Research, Inc. v. Auto. Club de l'Ouest de la France*, 245 F.3d 1359, 1362, 1364 (Fed. Cir. 2001); *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983); 5 *McCarthy*, § 31:38 (laches requires determining when a plaintiff was "actually or constructively on notice of defendant's activities").

Plaintiff wrongly compares its search report (consisting of just 449 references) to the telephone directory of two major New York counties, citing to *National Trailways Bus System v.*

---

[4] Section 1072 states "Registration of a mark on the principal register … shall be constructive notice of the registrant's claim of ownership thereof."

3

*Trailways Van Lines, Inc.* 269 F.Supp. 352, 359 (E.D.N.Y. 1965). Pln. Memo, 22. In that case, the court refused to infer notice for laches purposes from a listing in a telephone directory for Queens and Suffolk Counties in New York. That court did not find that the trademark owner had actual possession of the phone book, nor did it decide whether the listing could be constructive notice. *See id*. Further, such a telephone directory is <u>not</u> analogous to a small search report ordered by and prepared for Plaintiff for a specific mark in connection with specific goods. The phone book in *National Trailways* likely contained hundreds of thousands of entries.[5] Here, the search report was specifically and intentionally ordered and obtained by Plaintiff for the express purpose of searching for the mark PROTRAK and contains only 449 references. Pln. Memo, 22. Defendant's undisputed listing in Plaintiff's search report unequivocally establishes that Plaintiff knew or should have known of Defendant's names and marks in June 1998.

### ii.   **The Doctrine of Progressive Encroachment Does Not Apply**

Plaintiff contends that the doctrine of progressive encroachment prevents the defense of laches. Plaintiff has once again misapplied the law. The doctrine of progressive encroachment allows a plaintiff "some latitude" in bringing a suit, permitting a plaintiff to delay bringing a suit until a cause of action has ripened. *Profitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C.*, 314 F.3d 62, 70 (2d Cir. 2002).

This cause of action ripened when Plaintiff had knowledge of Defendant and its names and marks in June 1998.[6] Defendant first used the marks PROTRACKER, PROTRACKER

---

[5] The combined population of these two New York counties was nearly 2.5 million in 1960. *See* http://www.census.gov/population/cencounts/ny190090.txt.

[6] Plaintiff asserts infringement by Defendant's use of "PROTRACKER, PROTRACKER.com, and PROTRACKER ADVANTAGE or any other mark, word or name similar to registered mark which is likely to cause confusion…." *See* Complaint, Prayer for Relief at 1.  Plaintiff does not dispute that it is seeking relief against the marks PROTRACKER SOFTWARE and PROTRACKER SYSTEM, covered in Plaintiff's assertions against all of Defendant's use of the PROTRACKER marks.

4

SOFTWARE and PROTRACKER SYSTEM in 1997. Def. Ex. A, 16. Plaintiff, for laches purposes, knew of Defendant's use of PROTRACKER, PROTRACKER SOFTWARE and PROTRACKER SYSTEM since June 1998. *See supra,* pg. 2. At that time, Plaintiff's cause of action ripened. As undisputed by Plaintiff, Defendant always includes the dominant portion of its company name, PROTRACKER, in its products' names and always markets its products specifically to personal financial advisors. Def. Ex. A, 13. Defendant upgraded its software and named the upgraded software PROTRACKER ADVANTAGE, without knowledge of Plaintiff's alleged use of the term "advantage." Def. Ex. A, 17. The term "advantage" is a laudatory term[7] added to the significant portion of the mark, PROTRACKER. The PTO found Defendant's mark PROTRACKER ADVANTAGE to be registrable. Def. Ex. Q. Use of the term "advantage" did not result in Plaintiff's cause of action ripening. The action ripened in 1998 through use of the PROTRACKER names and marks. Thus, Plaintiff's cause of action was ripe for over seven (7) years before it finally took any action against Defendant.

### 4.  **Plaintiff's Allegations That Defendant Had Unclean Hands Are Unfounded**

In a desperate and misguided attempt to blame Defendant for its own delay, Plaintiff asserts that Defendant's "unclean hands" are a reason to deny enforcing laches. Plaintiff asserts that Defendant deliberately and knowingly infringed Plaintiff's trademark rights. Pln. Memo, 23. Plaintiff offers no evidence or support for its lawyer's assertions. *Id.* The undisputed facts show that Defendant chose its marks without knowledge of Plaintiff and its marks. Def. Memo, 19. When Defendant learned of the registration, Defendant investigated Marmen, the owner of the registration, and determined there was no infringement. *See* Pln. Ex. S. When Defendant learned of Plaintiff some years later, Defendant determined that the companies' respective products and

---

[7] Defendant has never asserted the term "advantage" to be "suggestive" as stated by Plaintiff. *See* Pln. Memo, 8 (fn 3) and 15, *cf.* Pln. Ex. Z where Defendant characterized the term "advantage."

5

customers were different. Def. Ex. A, 10. Thus, Defendant carried out its duty to avoid infringement.[8]

Plaintiff cites to the PTO's rejection of the application for PROTRACKER SYSTEM as "evidence" of Defendant's knowing infringement. Pln. Memo, 23. Defendant's PROTRACKER SYSTEM trademark application was rejected by the PTO, among other reasons, based on the registration's recited goods (which were not Plaintiff's goods). Pln. Ex. B. Plaintiff ignores the significant procedural reasons for the rejection. *See* Pln. Ex. T, 3 (evidence of third party use not properly before PTO). Plaintiff asserts that the PTO is an expert in determining likelihood of confusion. Pln. Memo, 23. Plaintiff then ignores the significant fact that Defendant later applied for and was awarded U.S. Trademark Reg. No. 3,038,202 for the mark PROTRACKER ADVANTAGE. Def. Ex. A, 18; Def. Ex. Q. The PTO readily awarded Defendant a registration for PROTRACKER ADVANTAGE, which in its expert view was not likely to cause confusion between Plaintiff or its mark and Defendant and its mark. Defendant expressly advised the PTO of Plaintiff's registration. Pln. Ex. Z, PSI 0849, 0863, 898-899. As Plaintiff must admit, the PTO's expert view is that there is no likelihood of confusion. Thus, Plaintiff's unclean hands argument fails.

    **5.**    **Plaintiff's Assertion That The Public Would Be Harmed Is False**

Plaintiff asserts that the interest in protecting the public against confusion in the marketplace prevents a finding of laches. However, there has been no, or at most *de minimis,* confusion between the parties' marks. *See infra*, pg. 9. There is no harm to the public where there has been no more than *de minimis* confusion with the marks. 5 *McCarthy*, § 31:10. To the contrary, if Defendant were enjoined from using its mark, its customers would be harmed by not being able to find Defendant and its products. Def. Ex. A, 16.

---

[8] Defendant has no duty to contact Plaintiff as Plaintiff asserts without support. *See* Pln. Memo, 2, 16.

6

B.	**Plaintiff's Asserted U.S. Reg. No. 1,835,278 Should Be Cancelled**

Plaintiff's asserted U.S. Reg. No. 1,835,278 is invalid as the mark had been abandoned prior to assignment to Plaintiff. Plaintiff's "evidence" that its assignor (Marmen) did not abandon the PROTRAK mark prior to assignment is a document from Defendant – that does not even mention the mark PROTRAK. Pln. Memo, 18-19; Pln. Ex. S. Straining credibility, Plaintiff cites to Defendant's submission to the U.S. Patent & Trademark Office ("PTO") from April 28, 1998 as evidence of Marmen's use of PROTRAK. *Id.* The PTO had cited the Marmen registration against the application for the PROTRACKER SYSTEM mark. Pln. Ex. B. In response, Defendant provided to the PTO a copy of Marmen's company history from its website to show that Defendant's and Marmen's goods differed. Pln. Ex. S, 3-5. Defendant did not have any actual knowledge of Marmen's business. A review of this material, now cited by Plaintiff, shows that Marmen's 1998 company history does not even mention the mark PROTRAK. *Id.* It only describes Marmen's business but is silent as to any use of a mark other than Marmen. *Id.*

Plaintiff ignores the undisputed letter from its own attorney, who wrote to the assignor on the same day he spoke with it: "if, as you indicated, Marmen is no longer using the mark [PROTRAK]…". Def. Ex. L. Marmen's abandonment of the mark did not arise from Plaintiff's contact with Marmen. Marmen was not using the mark PROTRAK when Plaintiff first talked to Marmen; Marmen told that fact to Plaintiff and Plaintiff knew it. *Id.* Marmen's signatory has confirmed these undisputed facts in an affidavit. Def. Ex. K.

Plaintiff mistakenly relies on the assignment language, which it drafted, as factual evidence of Marmen's use of the mark. Pln. Memo, 17. This bootstrap argument shows neither use of the mark nor validity of the assignment. The undisputed evidence before the Court shows that Marmen abandoned the mark and transferred no goodwill to Plaintiff. Def. Ex. K. Thus, the assignment is invalid and the registration should be cancelled.

C. **There Is No Likelihood Of Confusion Between the Parties' Names and Marks**

   1. **The Parties' Goods Are Very Different**

The parties' goods are very different. Rather than disputing any of the factual assertions made by Defendant or discussing the parties goods, Plaintiff relies on a statement made by the PTO during the PROTRACKER SYSTEM application examination. Pln. Memo, 9. Plaintiff relies on the PTO's statements based on Marmen's company history, not Plaintiff's goods, as evidence that Plaintiff's and Defendant's goods are similar. Pln. Ex. B, 2 (referring to Marmen's goods, not Plaintiff's). The undisputed relevant facts and evidence show that the parties' goods are different. Def. Memo, 10-13.

   2. **Channels Of Trade, Advertising, And Class Of Prospective Purchasers Are All Different**

Plaintiff does not dispute that: (1) Plaintiff and Defendant have different customers and prospective customers; (2) Plaintiff does not have and never has had **any** customers who are personal financial advisors; (3) Plaintiff's product does not include any pre-created standard reports for practice management for personal financial advisors; and (4) Plaintiff's product does not provide practice management for personal financial advisors to enable a user to run and manage a personal financial advisor's office as Defendant's product does. Defendant's customers are personal financial advisors. Def. Ex. A, 11. While some of Defendant's customers may have offices that contain both institutional advisors and personal financial advisors, Defendants' software is marketed and used for the individuals within the company who are personal financial advisors. *Id.* at 21. This is logical considering that Defendant's software is designed to manage a personal financial advisor's practice and not the practice of an institutional advisor. *Id.*

Plaintiff ignores the critical differences in the parties' specific and actual advertising that are key as to the prospective purchasers reached. For example, Plaintiff states that both parties make presentations at conferences. Pln. Memo, 11. Plaintiff does not dispute that the parties do

8

not attend, and have never attended, the same conferences or trade shows. Thus, Plaintiff and Defendant use marketing methods every business uses, but specifically advertise through very different channels to reach the very different prospective purchasers of their different goods. *See* Def. Memo, 14-17.

### 3.     Lack of Actual Confusion

Plaintiff misrepresents the facts surrounding the alleged confusion of Dave Andera of Capital Investment Services. Mr. Andera was at a conference for, and saw products relating to, personal financial advisors and later made a clerical error when obtaining Defendant's phone number. Def. Ex. M. Indeed, after speaking with Plaintiff (who did not direct him to Defendant), Mr. Andera contacted Defendant for information regarding Defendant's product. Def. Ex. N.

The timing of this one instance is neither significant nor related to the adoption of ProTracker Advantage as alleged by Plaintiff. Rather, the timing is related to when Mr. Andera attended the conference where he heard of Defendant. He made a clerical error when obtaining the phone number and called Plaintiff. Even if Mr. Andera was confused, this is just one asserted instance over nine (9) years of concurrent use of the parties' marks. An absence or *de minimis* amount of actual confusion "between two products after a long period of coexistence on the market is highly probative in showing that little likelihood of confusion exists." *Aktiebolaget Electrolux v. Armatron Int'l, Inc.*, 999 F.2d 1, 7 (1st Cir. 1993); *see also* Pln. Memo, 18.

### 4.     The Marks Are Different

Plaintiff asserts that the PTO is an expert in determining likelihood of confusion and cites to the PTO's rejection of PROTRACKER SYSTEM as evidence of similarity of the marks. Pln. Memo, 7. Plaintiff ignores the undisputed fact that the PTO awarded Defendant a registration for PROTRACKER ADVANTAGE. *See supra*, pg. 6. Thus, the parties marks are different.

9

### 5. Defendant's Intent and Strength of the Marks

There are no genuine issues of material fact relating to Defendant's intent when adopting its marks. *See supra*, pg. 5 for a more detailed rebuttal to Plaintiff's unsupported assertions.

Plaintiff misconstrues the significance of a trademark search as submitted by Defendant at Ex. I and its relation to the strength of the mark. The search illustrates the many marks and uses similar to PROTRAK, providing evidence of others who have at least considered using the term, and is evidence supporting the fact that the disputed marks are not unique and not strong.

### 6. There is No Likelihood of Confusion

There are no genuine issues of material fact. In reviewing the above factors, it is clear that the balance of factors weighs in favor of Defendant. This Court should grant summary judgment as there is no likelihood of confusion between the parties' names and marks.

### III. CONCLUSION

In view of the foregoing and as set forth in Defendant's opening memorandum, Defendant has demonstrated that Plaintiff is barred from obtaining relief in this action under the doctrine of laches; the federal trademark registration asserted by Plaintiff should be cancelled; and there is no likelihood of confusion between Defendant's and Plaintiff's names and marks.

PROTRACKER SOFTWARE, INC.

Dated: October 20, 2006

By: /s/Mark K. Suri
    One of Its Attorneys

| | |
|---|---|
| Teresa C. Tucker | Mark K. Suri |
| GROSSMAN, TUCKER, | Eric H. Weimers |
| PERREAULT & PFLEGER, PLLC | RYNDAK & SURI LLP |
| 55 South Commercial Street | 200 West Madison Street, Suite 2100 |
| Manchester, NH 03101 | Chicago, IL 60606 |
| Telephone: 603-668-6560 | Telephone: 312-214-7770 |
| Facsimile: 603-668-2970 | Facsimile: 312-214-7715 |
| Email: ttucker@gtpp.com | Email: suri@ryndaksuri.com |

10

## CERTIFICATE OF SERVICE

I, Mark K. Suri, certify that a true and correct copy of the foregoing **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was served electronically, through ECF, upon counsel for Plaintiff Pro Trak International, Inc.:

> Michael J. Bujold, Esq.
> Davis & Bujold P.L.L.C.
> 112 Pleasant Street
> Concord, NH 03301-2931
> Telephone: (603) 226-7490
> Facsimile: (603) 226-7499
> Email: patent@davisandbujold.com

on this 20th day of October, 2006.

By: /s/Mark K. Suri
Mark K. Suri
Attorney for Defendant