UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Pro Trak International, Inc.</u>

    v.                                      Civil No. 05-cv-342-JM

<u>Protracker Software, Inc.</u>

**O R D E R**

Defendant moves for summary judgment on all counts of Plaintiff's Amended Complaint, Counts I & II of its counterclaim and on its Affirmative Defenses 1-4, 6 and 7.  I find that there are numerous genuine issues of material fact upon which a reasonable jury could find for either side.  Consequently, I deny the motion (document no. 23).

<u>Standard of Review</u>

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved

in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one "that might affect the outcome of the suit." Id. at 248.

In ruling on a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmovant. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001). The party moving for summary judgment "bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the burden shifts to the nonmovant to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249). Neither conclusory allegations, improbable inferences, nor unsupported speculation are sufficient to defeat summary judgment. Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002).

Facts

Defendant was incorporated in New Hampshire in 1997 by Warren Mackensen, a Certified Financial Planner (CFP) to develop, market and license software he had created.  The software provides a management tool for aspects of a financial planning practice which, among other things, automates repetitive tasks, tracks work flow processes, performs calculations and provides reminders.  At inception the defendant operated its business out of Mr. Mackensen's house.  Currently it has three employees and continues to market practice management software exclusively for CFP's.

Plaintiff is a New York based corporation which "is the global leader and a major innovative force in the development and delivery of Client Relationship Management software (CRM) to the investment management community."  www.protracker.com.  Its clients includes such giants as JP Morgan and GM Asset Management.  It does not sell its products to the CFP community but rather to large investment managers.  Plaintiff has been in business since at least 1988.

In July of 1997 defendant filed an application for a trademark of "Protracker System".  Exh. L.  The application was

refused because of the likelihood of confusion with the registered mark in Registration No. 1,835,278 owned by Marmen Computing, Inc.  Defendant then abandoned its application.  Defendant became aware of plaintiff during prosecution of the trademark but its principal says he determined that the product and market of the two companies were different.

In June of 1998 plaintiff, through its attorney, conducted a trademark search for "PRO TRACK" for software goods.  That search disclosed Marmen, the defendant and many others.  Defendant asserts that Marmen had abandoned the mark while plaintiff says that Marmen was using the mark for enterprise – wide computer networks in municipal, corporate and governmental environments.  Plaintiff was assigned the mark by Marmen in exchange for $750.00.  While defendant is listed a few pages apart from Marmen on the attorney's search, plaintiff's attorney claims he didn't note defendant and notes that the list has many pages.

In September of 2003 defendant filed a trademark application to register "PROTRACKER ADVANTAGE" and began commercial use on December 22 or 23, 2004.  Trademark Reg. No. 3,038,202 issued to defendant.  Plaintiff has used "PROTRACK ADVANTAGE" since on or about 2001.

Discussion

After considering the motion for summary judgment, drawing all reasonable inferences in favor of the non-moving party with respect to the motion, the Court finds that there are numerous genuine issues as to material fact that prevent the entry of summary judgment.

1.   Laches

Defendant first relies on the doctrine of laches and asserts laches as a complete bar to plaintiff's suit.  The equitable doctrine of laches is a defense in a trademark case.  5 McCarthy on Trademarks, § 31:3 (tracing the development of the guidelines of the laches defense in trademark cases).  Laches is a defense to both requests for injunctive relief (equitable claims) and for damages (legal claims).  Id.  However, "the defense of estoppel by laches is only rarely applied to bar a permanent injunction after a strong case of likely confusion has been proven."  Id. at § 31:6.  "(I)t usually requires a full trial on the merits not disposition on summary judgment."  Id. at § 31:1.

To establish the defense "defendant must prove (1) plaintiff knew of defendant's use of its mark, (2) plaintiff unreasonably delayed in taking action, and (3) defendant will be prejudiced."

PC Connection, Inc. v. Programmer's Connection, Inc., 1994 WL 258656, at *7 (D.N.H. 1994).  For summary judgment purposes, defendant's laches claim falters coming out of the gate.  The earliest date plaintiff can be shown to have <u>known</u> about defendant's use of its mark is 2004.  Defendant points to a July 1998 trademark search report for the mark "PRO TRAK" which was obtained by plaintiff's attorney.  That report does include defendant's corporate name "PROTRACKER SOFTWARE, INC.", its address and its applied-for mark "PROTRACKER SYSTEM".  The attorney recalled little about the search other than he had ordered it, it was produced from his files and shortly after the search he contacted Marmen, a company identified in the search.  The search result is over 250 pages long.  Exh. R, Parts I-IV.  Marmen is listed on page 15, Exh. R, Part I.  Protracker Software, Inc. is listed on page 36 of that Part.  Unlike Marmen it is not listed as having a registered trademark.

From these facts defendant argues at least constructive knowledge since July 1998 by plaintiff's attorney which knowledge, it argues, is imputed to plaintiff.  In short, defendant cannot show actual knowledge.  Defendant's claim is of imputed knowledge in 1998.  Plaintiff, on the other hand, states

it first had knowledge of defendant in 2004. App. D. Koziel, Tr. 15-16. On the issue of laches knowledge is clearly a genuine issue of controverted material fact.

I need not address the last two prongs of the laches claim. The motion is denied as to laches.

### 2. Likelihood of Confusion Between Parties' Names and Marks

The Lanham (Trademark) Act, 15 U.S.C. § 1151 et seq. protects the public and trademark owners by "prevent(ing) the use of the same or similar marks in a way that confuses the public about the actual source of the goods or service." Star Fin. Servs., Inc. v. Aastar Mortgage Corp., 89 F.3d 5, 9 (1st Cir. 1996). Likelihood of confusion is a question of fact. Anheuser-Busch v. Caught-on-Bleu, 288 F. Supp. 2d 105, 114 (D.N.H. 2003), aff'd without op., 105 Fed. Appx. 285 (1st Cir. 2004), cert. denied, 544 U.S. 920 (2006). The factors considered in determining likelihood of confusion are:

> (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark.

Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 817 (1st Cir. 1987). "No one factor is necessarily determinative, but each must be considered." Id.

### a. Similarity of the marks

This issue is not determined by the parties' respective logo. They are very different in style, type and layout but the main feature of each contains the letters "PROTRA_K". This, plaintiff argues, makes the differences de minimus in comparison. The evidence is that defendant's trademark application was refused because of its likely confusion with "PROTRAK". The determination of the Patent and Trademark Office is entitled to great weight. Syntex Laboratories, Inc. v. Norwich Pharmacal Co., 437 F.2d 566, 569 (2d Cir. 1971). In addition adding "Advantage", which both parties have done, provides no basis to distinguish the two marks.

Given the PTO's prior finding and the mutual addition of "Advantage" defendant has not met its burden of showing no genuine issue of fact on the similarity prong.

### b. Similarity of Goods

An owner of a trademark is afforded "protection against use of its mark on any product or service which would reasonably be

thought by the buying public to have come from the same source." Anheuser-Busch, 288 F. Supp. 2d at 118 (Quoting 4 McCarthy on Trademarks and Unfair Competition § 24:6).  Again, the PTO found that the goods are similar and that must be afforded great weight.  Syntex Laboratories, Inc., 437 F.2d at 569.  Both products consist of business computer software which helps managers manage contacts, lists and money.  There are also many dissimilarities such as the type of calculations, size and complexity of finances managed and the overall use of the program.  What cannot be said is that defendants have carried their burden to show such dissimilarity between the products as to eliminate a genuine issue of material fact.

### c., d. & e. Prospective Customers, Promotional Activities and Trade Channels

Plaintiff argues that the parties' class of prospective customers significantly overlaps.  They have shown factually some overlap.  However, it is a real stretch to say that there is significant overlap.  In fact, defendant has demonstrated that there is no genuine issue of material fact on the key issue of customers – defendant's customers are individual and small-firm personal financial advisors while plaintiff's customers are large institutional investors.

The respective customers are in different aspects of the financial industry, belong to different professional associations and generally attend different conferences.  Defendant advertises in NAPFA Advisor and has a web site.  It does not solicit by direct mail or email.  It does not purchase keyword ads from search engines.  In contrast, plaintiff does all of those things.  There is no genuine issue of material fact on these legs of the likelihood of confusion question.

### f.  Actual confusion

In nine years of concurrent use of their respective names and marks plaintiff, at this point, can point to only one incidence of actual confusion.  Defendant argues that the facts surrounding the contacts with Mr. Andera in fact demonstrate no actual confusion.  The parties each argue the facts and inferences well.  The summary judgment stage is not the point at which I am to find facts but rather I am only to determine whether there are genuine issues on controverted facts.  Hearing the testimony and assessing credibility is for trial.  At this stage whether Mr. Andera's situation establishes actual confusion and the timing and circumstances of it point to a genuine issue of material fact.

g.  Defendant's Intentions

The facts show that when defendant tried to register its trademark it learned of plaintiff, its corporate name and trademark. The PTO rejected the application because of likelihood of confusion. Defendant withdrew its application but it persisted in using its mark despite its knowledge of plaintiff. It did so because, plaintiff says, its principal "determined that our respective products were different, and that we were not in the same market . . ." Exh. A.10. It may be that defendant can persuade the court of its good faith and intent at trial but the facts relating to the rejection of the defendant's application and Mr. Mackensen's affidavit establish a clear genuine issue of material fact.

h.  Strength of the plaintiff's mark

"'Strong' marks are accorded broader protection against infringement than are 'weak' marks." Volkswagenwerk Aktiengesellschaft, 814 F.2d at 819. To determine the strength of a mark the court looks to "the length of time the mark has been used, its renown in the plaintiff's field of business, and the plaintiff's actions to promote the mark." Star Fin. Servs. v. Aastar Mortg. Corp., 89 F.3d 5, 11 (1st Cir. 1996).

11

Plaintiff's mark has been used since 1998.  It's products are marketed widely in its field.  Defendant relies on a trademark search to show weakness.  However, search report evidence is hearsay; it does not establish extensive use by others; and, in fact, does not establish use of the mark.  2 McCarthy on Trademarks and Unfair Competition, §§ 11:88 and 11:89.  In short, defendant has not sustained its burden on this prong.

Summary judgments for defendant on likelihood of confusion are very few and hard to get.  This case is no different.

I find that there are many genuine issues of material fact on all theories briefed.

## Conclusion

For the reasons set forth above, the court finds that defendant is not entitled to summary judgment, and therefore denies its motion (document no. 23).

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: March 1, 2007

```
cc:    Michael J. Bujold, Esq.
       Neal E. Friedman, Esq.
       Roger Masson, Esq.
       Mark K. Suri, Esq.
       Teresa C. Tucker, Esq.
       Eric H. Weimers, Esq.
```